**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARGARET J. LOPEZ, individually
and on behalf of all others similarly
situated,

       Plaintiff,

vs.                                    No. CV 16-01257 RB-KBM

EL MIRADOR, INCORPORATED,
and LOUIS PEREA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

The Fair Labor Standards Act (FLSA) provides certain protections to vulnerable workers. Due to concerns about the unequal bargaining power between workers protected by the FLSA and their employers, settlements of FLSA suits are only enforceable if supervised by the Secretary of Labor or approved by a court. Plaintiff Margaret J. Lopez brought suit on behalf of herself and similarly-situated workers against Defendants El Mirador, Inc. and Louis Perea to recover unpaid overtime wages under the FLSA. After discovery and negotiations, the parties reached a settlement. Ms. Lopez and El Mirador now ask the Court to approve their settlement.

## FACTS

The FLSA provides protections for portions of the workforce that Congress deemed especially vulnerable to employer abuse. *See generally* 29 U.S.C. §§ 201–09 (explaining the provisions of the FLSA). The FLSA requires employers to pay certain employees minimum wages, as well as overtime compensation for any hours over 40 that those employees worked in a

week. *See* 29 U.S.C. §§ 206(a), 207(a)(1). Overtime compensation must equal at least 150% of normal hourly wages. 29 U.S.C. § 207(a)(1).

Sections 213(a)(15) and 213(b)(21) of the FLSA exempt workers who provide domestic or companionship services from the FLSA's overtime protections. *See* 29 U.S.C. §§ 213(a)(15), (b)(21). Originally, the Department of Labor interpreted §§ 213(a)(15) and (b)(21) to include workers who were employed by third-party agencies. *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1088 (D.C. Cir. 2015). Over time, however, the demand for home care increased as more people with care needs began to receive services at home rather than in institutional settings, as they had in the past. *See id.* at 1089. Recognizing the change in the home care industry, the Department of Labor adopted a new regulation, 29 C.F.R. § 552.109(a) ("Final Rule"), treating certain companionship and live-in employees as non-exempt workers covered by the FLSA's overtime protections. *See Home Care*, 799 F.3d at 1089.

Defendants El Mirador, Inc. and Louis Perea (collectively, "El Mirador") provide home care services. (*See* Doc. 1 at 2–3.) El Mirador hires workers and sends them to its clients' homes to provide healthcare and companionship services. Plaintiff Margaret J. Lopez claims to be a home care worker employed by El Mirador between January 1, 2015, and March 1, 2016. (*Id.* at 2.) During that time, according to Ms. Lopez, El Mirador contravened the Final Rule by misclassifying her and other home care workers as "exempt" employees, who are not covered by the overtime and minimum wage provisions of the FLSA. (*See* Doc. 20 at 2.) Accordingly, El Mirador did not pay Ms. Lopez or other home care workers overtime wages of 150% of normal pay for any hours over 40 that they worked. (Doc. 1 at 5.)

On behalf of herself and all others similarly situated, Ms. Lopez brought an FLSA collective action under 29 U.S.C. § 216(b) against El Mirador to recover unpaid overtime wages.

(*Id.* at 1.) Ms. Lopez also brought a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages for herself and similarly-situated employees under the New Mexico Minimum Wage Act (NMMWA), N.M. Stat. § 50-4-22. (*Id.* at 1–2.)

On September 11, 2017, Ms. Lopez and El Mirador presented the Court with a joint motion to approve a settlement that the parties had reached. (Doc. 45.) According to the joint motion, the settlement negotiations between Ms. Lopez and El Mirador had centered on a dispute about when the Final Rule became effective. (*Id.* at 5.) Ms. Lopez believed that the Final Rule was effective on January 1, 2015, while El Mirador argued that the effective date was October 13, 2015. (*Id.*) Owing to the dispute over the effective date of the Final Rule, the proposed settlement agreement compromised on wages: in the disputed period from January 1, 2015, to October 12, 2015 ("Disputed Period"), Ms. Lopez and any class members would receive 60% of the overtime wages they were allegedly owed, while in the period from October 13, 2015, to the date the Court approves the settlement ("Undisputed Period"), Ms. Lopez and any class members would receive 100% of the overtime wages they were allegedly owed. (Doc. 45 at 7–8.)

Specifically, under the terms of the settlement, El Mirador agrees to pay a maximum of $160,484.96 ("Gross Settlement Amount"). (Doc. 46 at 7.) The Gross Settlement Amount includes a service award of $2,500 to Ms. Lopez for coming forward as the class representative. (*See id.* at 6.[1]) It also includes 60% of alleged overtime wages from the Disputed Period, totaling $57,334.50, as well as 100% of alleged overtime wages from the Undisputed Period, totaling $63,650.46 as of April 5, 2017. (*See id.*) Finally, the Gross Settlement Amount contains attorney's fees and costs of $37,000. (*Id.*) Any amount of the service award, attorney's fees, or allocated payment to class members that is not awarded to its designated recipient will remain

---

[1] Using the parties', not CM/ECF's, pagination.

the property of El Mirador. (*See id.* at 9–10.) The amount allocated to class members will be subject to withholding for taxes. (*Id.* at 10.)

The settlement agreement also requires El Mirador to retain and pay for a Settlement Administrator, who will assist with the implementation of the settlement, including mailing notices to the potential settlement class members. (*Id.* at 6–7.) Payment to the Settlement Administrator will not come out of the Gross Settlement Amount.

The parties ask the Court to (1) certify the class as a collective action under § 216(b) of the FLSA and (2) approve the proposed settlement. The Court now turns to the parties' requests.

## LEGAL STANDARD

### I. Overview and Certification of FLSA Collective Actions.

Section 216(b) of the FLSA provides that an employee may bring a collective action on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). The Tenth Circuit uses a two-tiered approach to determine whether named and prospective plaintiffs are sufficiently "similarly situated" such that a court may certify a collective action under § 216. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

The first tier applies during the initial "notice" stage, when discovery has not yet been completed. *See Medrano v. Flowers Foods, Inc.*, No. CV 16-350 JCH/KK, 2017 WL 3052493, at *2 (D.N.M. July 3, 2017). At this point, the Tenth Circuit requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* Later, after a class has been conditionally certified, the parties conduct discovery and send notice to prospective class members, who must opt in to the litigation as plaintiffs. *Id.* Because class members must opt in rather than opt out, FLSA collective actions are different from opt-out class actions brought under Rule 23 of the Federal Rules of Civil Procedure, and Rule 23's

numerosity, commonality, typicality, and adequacy of representation requirements do not apply to FLSA collective actions. *See id.* at *2 n.1.

At the conclusion of discovery, or if the parties decide to settle, the court must approve final certification of the FLSA collective action. *See id.* at *2; *see also Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 1403730, at *4 (D. Kan. Apr. 11, 2016) ("[T]he Court must make some final class certification finding before it can approve an FLSA collective action settlement."). At this point, the Tenth Circuit applies the second, more rigorous, tier of scrutiny to examine whether named and prospective plaintiffs are sufficiently "similarly situated." *Medrano*, 2017 WL 3052493, at *2. Under the stricter scrutiny of tier two, courts will examine factors such as the disparate factual and employment settings of individual plaintiffs, the defendant's unique defenses against individual plaintiffs, and fairness and procedural considerations. *See Thiessen*, 267 F.3d at 1102–03.

## II. Settlements under the FLSA.

Congress passed the FLSA to protect certain groups of particularly powerless employees from "substandard wages and excessive hours which endangered the national health and well-being . . . ." *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). These workers, whom Congress singled out for protection, were particularly vulnerable to abuse and did not have the bargaining power to match their employers. *See id.* at 706–07. Given this background, Courts would undermine the FLSA's policy of protecting vulnerable workers if they allowed workers to simply bargain away their FLSA rights. *See id.* at 707.

In *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit declared, "there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Id.* at 1352. Relevant to this case, the *Lynn's*

*Food* Court noted that in an FLSA suit brought by employees, "the employees are likely to be represented by an attorney who can protect their rights under the statute," so the settlement is "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at 1354. Consequently, one way in which FLSA claims may be compromised or settled is "[w]hen employees bring a private action . . . under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."[2] *Id.* at 1353.

In scrutinizing the settlement for fairness, courts should consider whether (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees. *See Rodarte v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at *7 (D.N.M. Aug. 28, 2015).

## APPLICATION

### I. Certification of the Collective Action.

The proposed FLSA collective action satisfies the "similarly situated" standard under the first tier of scrutiny for certifying a § 216(b) collective action. At the notice stage, the Tenth Circuit requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Medrano*, 2017 WL 3052493, at *2. Ms. Lopez has defined "similarly situated" employees, on whose behalf she hopes to sue, as "all current and former home health workers employed by Louis Perea or El Mirador . . . who were not paid overtime for all hours worked over 40 in a work week from January 1, 2015 to the present." (Doc. 46 at 5.) Because Ms. Lopez has credibly alleged that she and the potential plaintiffs were

---

[2] The other way in which FLSA claims can be compromised—a settlement supervised by the Secretary of Labor—is inapplicable here.

together the victims of El Mirador's policy of misclassifying them as exempt from overtime wages under the FLSA, the proposed class is sufficiently "similarly situated" to be conditionally certified for notice purposes.

The parties have asked the Court for approval, however, of a final settlement. At this stage, the Court must apply the second, stricter, tier of scrutiny for certifying the collective action. *Koehler*, 2016 WL 1403730, at *4. The Court must consider: (1) the disparate factual and employment settings of individual plaintiffs, (2) the defendant's unique defenses against individual plaintiffs, and (3) fairness and procedural considerations. *See Thiessen*, 267 F.3d at 1102–03.

(1) <u>Disparate factual and employment settings of individual plaintiffs</u>.

Ms. Lopez claims that all potential plaintiffs shared the "same primary job duty" of "providing care, companionship, and support services to [El Mirador's] clients." (Doc. 20 at 3.) The potential plaintiffs worked for El Mirador as health care workers on or after January 1, 2015, and were together classified by El Mirador as exempt from the FLSA's overtime provisions. (*Id.* at 2.) None of the potential class members were paid FLSA-mandated overtime wages for any hours over 40 that they worked in a week. (*Id.*) These facts suggest that the disparate factual and employment settings of individual plaintiffs are similar enough such that the collective action may be certified. *See Koehler*, 2016 WL 1403730, at *5 (finding that the similar job duties, job requirements, classification under the FLSA, and compensation of the class members supported certifying a collective action).

Crucially, however, the proposed class members worked for El Mirador during different periods of time, a fact that the proposed settlement highlights and makes significant. In particular, § 216(b) of the FLSA provides that a plaintiff with a meritorious claim for unpaid

overtime compensation may receive, in addition to any overtime compensation, an "additional equal amount as liquidated damages." *See* 29 U.S.C. § 216(b). But the settlement agreement does not provide for liquidated damages as allowed under § 216(b). Since the parties have represented to the Court that the primary debate was about when the Final Rule became effective, the settlement would not make financial sense for a worker whose tenure with El Mirador began after October 13, 2015 (when the Undisputed Period began). Those workers from the Undisputed Period are unaffected by the "effective date" dispute regarding the Final Rule, so they apparently have a strong claim for overtime pay—and, as explained later in this opinion, for liquidated damages as well.

Take, for example, a worker who was owed $100 of overtime pay and only began working for El Mirador during the Undisputed Period. If this worker sued under the FLSA, he has a strong claim for both overtime compensation and liquidated damages—$200 in the example ($100 for unpaid overtime and $100 in liquidated damages). But under the terms of the settlement, the worker would only receive $100, and he would not receive any benefit of the bargain from the deal struck for the Disputed Period.

The potential settlement class includes many individuals who, like the hypothetical individual above, would receive zero dollars from the Disputed Period. (*See* Doc. 46 Ex. C.) Those workers could recover more if they brought an action on their own than if they acquiesced to the proposed settlement.

The fact that the § 216(b) collective action is an opt-in regime, where class members are not bound unless they affirmatively opt in to the litigation, does not absolve the Court of its responsibility to ensure that the class is similarly situated. Under the proposed settlement, the

disparate factual and employment settings of individual plaintiffs strongly suggest that the potential class members are not sufficiently similarly situated for final certification.

(2) <u>El Mirador's unique defenses against individual plaintiffs</u>.

In the joint motion to approve the FLSA settlement, El Mirador indicated that it had a defense regarding the effective date of the Final Rule—El Mirador believed the Final Rule was effective only during the Undisputed Period, not during the Disputed Period. (*See* Doc. 45 at 5.) Again, there are potential class members who only began working for El Mirador during the Undisputed Period. For those individuals, El Mirador's effective date argument is irrelevant. Thus even if the effective date argument were El Mirador's only defense, El Mirador would still have a defense that is applicable to some members of the potential class and inapplicable to others. This factor leans against certification.

(3) <u>Fairness and procedural considerations</u>.

The policy of allowing plaintiffs to pool their resources for litigation and the policy encouraging settlement of litigation weigh in favor of certifying the collective action. *See Koehler*, 2016 WL 1403730, at \*6.

After weighing the three factors above, the Court concludes that final collective action certification is inappropriate given the proposed settlement.

## II. Fairness of the Settlement.

A court may only enter a stipulated judgment in an FLSA action if it is satisfied that the proposed settlement is fair. *See Lynn's Food*, 679 F.2d at 1353. In scrutinizing the settlement for fairness, courts should consider whether (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees. *See Rodarte*, 2015 WL 5090531, at \*7.

(1) <u>Whether the litigation involves a bona fide dispute</u>.

The parties must present to the Court information about the nature of the dispute; a description of the employer's business and the type of work the employees perform; the employer's reasons for disputing the demanded wages; the workers' justification for the demanded wages; and, if there is a dispute about wages owed, each party's estimate of the hours worked and applicable wages. *See Rodarte*, 2015 WL 5090531, at *7. From this information, a court should determine whether there is a real dispute in the case.

Through their filings, the parties have generally provided the above information to the Court. Most importantly here, the parties highlighted what they considered to be the "primary dispute" in the case: when the Final Rule became effective. (*See* Doc. 45 at 5.) Although the Final Rule had an official effective date of January 1, 2015, a district court in Washington, D.C. had vacated the Final Rule before the D.C. Court of Appeals later reversed the district court and reinstated the rule. *See Home Care*, 799 F.3d at 1097. As a result, some district courts have determined that the Final Rule was effective on January 1, 2015. *See, e.g., Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 492 (S.D.N.Y. 2017); *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 986 (W.D. Ark. 2016). Other district courts, however, have found that the Final Rule became effective on October 13, 2015, when the D.C. Court of Appeals issued a mandate making its opinion effective. *See, e.g., Sanchez v. Caregivers Staffing Servs., Inc.*, No. 1:15-CV-01579, 2017 WL 380912, at *2–3 (E.D. Va. Jan. 26, 2017); *Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2017 WL 511836, at *3 (S.D.N.Y. Feb. 8, 2017). The parties claim there is no appellate decision resolving this issue. (Doc. 45 at 6.)

The Court is satisfied that there is a real dispute about the Final Rule's effective date.

(2) <u>Whether the proposed settlement is fair and equitable to all parties</u>.

To determine whether a proposed FLSA settlement is fair and equitable, courts often borrow the Rule 23(e) factors that apply to proposed federal class action settlements. *Koehler*, 2016 WL 1403730, at *7. These factors include "whether the proposed settlement was fairly and honestly negotiated," whether there were serious questions of law and fact, "whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation," and "the judgment of the parties that the settlement is fair and reasonable." *Id.*

The parties assert that they reached the proposed settlement "only after extensive research, legal debates, discussions, and correspondence, and after good faith and arm's length negotiations." (Doc. 45 at 3.) For a period of about five months, the parties engaged in formal discovery and informal exchange of information. (*Id.*) The parties further claim that the settlement eliminates "inherent risks both sides would bear if this complex litigation continued to resolution on the merits" and that the "issues are well understood by both sides." (*Id.* at 7.) Both parties believe that the settlement is fair and reasonable. (*Id.* at 7–8.) Given this information, the Court believes the settlement satisfies the Rule 23(e) factors.

In addition to the Rule 23(e) factors, a court must also determine that the settlement comports with the FLSA's policy objectives. *Koehler*, 2016 WL 1403730, at *7. In undertaking this analysis, the Court examines the (i) notice of the proposed settlement, (ii) confidential nature of the settlement, (iii) proposed service award to Ms. Lopez, and (iv) lack of liquidated damages.

(i)     *Notice of the proposed settlement*.

The FLSA's broad remedial purpose, the court's interest in avoiding multiplicity of suits, and the Department of Labor's "regulatory effort to notify employees of their FLSA rights" require that notice be sent to all similarly situated employees in a collective action. *See Pivonka*

*v. Bd. of Cty. Comm'rs of Johnson Cty., Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *5 (D. Kan. July 27, 2005); *Koehler*, 2016 WL 1403730, at *10. A court may monitor the preparation and distribution of notice to ensure that information distributed to potential class members is timely, accurate, and informative. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

At the fairness hearing, plaintiff's counsel told the Court that First-Class mail is the "gold standard," and that the Settlement Administrator can provide feedback about the percentage of mail that was delivered. Relying on those representations, the Court determines that any final settlement must designate a target percentage of successfully-delivered notices, and the settlement should specify remedial steps to improve notice if the percentage of successfully-delivered notices falls below the target percentage. Also, any final settlement should require El Mirador to post the notice in conspicuous areas of its offices.

(ii)     *Confidential nature of the settlement.*

"It is well-settled that a confidentiality provision in an FLSA agreement . . . contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights." *Koehler*, at *10. At least one commentator has argued that the public's interest in seeing the transparent and faithful enforcement of the FLSA outweighs litigants' desires for privacy. *See* Elizabeth Wilkins, *Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109, 112 (2013).

The settlement documents are currently under seal to protect the potential class members' privacy, and the parties have asked the Court to keep the documents under seal even after final approval of a settlement. The parties' request is overbroad, however, because only one exhibit in

the settlement documents contains personal information of potential class members. Before the Court approves any proposed settlement, all documents that do not contain personal information of class members should be unsealed.

(iii) *Proposed service award to Ms. Lopez.*

There may be problems of collusion "when representative plaintiffs make what amounts to a separate peace with defendants." *Women's Comm. for Equal Emp't Opportunity (WC=EO) v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977). Incentive awards—payments to class representatives that other members of the class do not receive—could be construed as "separate peace" between class representatives and the defendants. To ensure that there is no collusion and that class representatives do not use the collective action mechanism for personal aggrandizement, "the Court also must examine any service award payments to determine whether they are fair and reasonable." *See Koehler*, 2016 WL 1403730, at *10; *Barbosa v. Nat'l Beef Packing Co., LLC*, No. CIV.A. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015).

One court examining incentive awards has concluded that the awards are justified only when "a class representative is not forthcoming," when a "class representative undertakes risk," or when the class representative's efforts exceed the effort of a typical class representative or individual plaintiff. *See Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *5, *13 (D.N.M. Jan. 31, 2011). Another court in a similar case determined that the class representatives deserved an incentive award of $20.00 for each hour they worked. *Barbosa*, 2015 WL 4920292, at *6.

Here, Ms. Lopez took the initiative to enforce her and similarly-situated workers' rights, and she voluntarily assumed a fiduciary responsibility to any member of her class, as well as any

attendant risk for being the face of the complaint against El Mirador. The $2,500 service award is reasonable.

(iv)    *Lack of liquidated damages.*

One major goal of the FLSA is to ensure that vulnerable workers are able to maintain the minimum standard of living necessary for their "health, efficiency, and general well-being." *See Brooklyn*, 324 U.S. at 707. The liquidated damages provision of the FLSA is compensatory, not punitive, as it reflects Congressional recognition that employees who do not receive the FLSA's mandated overtime and minimum wages on time are likely to suffer in the interim because they lack the resources without those wages to maintain a healthy standard of living. *See id.* at 707–08. Double pay, in the form of liquidated damages, is Congress's attempt to "restore damage done by such failure to pay on time," and payments of liquidated damages "*must* be made to accomplish Congressional purposes." *See id.* (emphasis added).

Home care workers, like the potential plaintiffs in this case, are predominantly women in their mid-forties, minorities, and people with a high school education or less. *See* Application of the Fair Labor Standards Act to Domestic Service, 76 FR 81190-01. About 40% of these workers receive public assistance. *Id.* The industry of these home workers is characterized by high turnover, "low wages, poor or nonexistent benefits, and erratic and unpredictable hours." *See id.* As plaintiff's counsel aptly stated, "[h]ome care workers are typically in the lower rungs of the socio-economic ladder and live paycheck to paycheck." (Doc. 20 at 9.)

Given that home care workers like Ms. Lopez and the potential class members are *precisely* the type of vulnerable workers Congress sought to protect with the liquidated damages provision—workers who endure hardship when their employer delays in paying their wages—the Court is surprised that the settlement makes no mention of liquidated damages, other than to

say that the workers agree to waive them. And incorporating liquidated damages into a settlement is not novel. As just one example, in another FLSA collective action for unpaid overtime wages, the parties multiplied the class members' awards by two to factor in liquidated damages. *See Robles*, 2011 WL 9717448, at *3.

In fact, liquidated damages are the norm. *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011). It is only when the employer shows that its conduct was both in good faith and based on a reasonable belief that it complied with the FLSA that the court may, in its discretion, award less or no liquidated damages. *See id.* "The good-faith inquiry is subjective, requiring an 'honest intention to ascertain and follow the dictates' of the FLSA," while "the reasonableness requirement is an objective standard." *Id.* (quoting *Dep't of Labor v. City of Sapulpa, Okla.*, 30 F.3d 1285, 1289 (10th Cir. 1994)). "Ignorance alone will not exonerate the employer under the objective reasonableness test"; the employer must "take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Burke v. Alta Colls., Inc.*, No. 11-CV-02990-WYD-KLM, 2014 WL 2882807, at *5 (D. Colo. June 25, 2014) (citations omitted).

At the fairness hearing, the Court asked the parties why the settlement did not provide for liquidated damages. Plaintiff's counsel responded by saying that he did not negotiate for liquidated damages because recovery for overtime pay during the Disputed Period was uncertain, El Mirador subjectively did not know that it was violating the FLSA, and because he believed the most reasonable solution to the case was something that expeditiously compensated workers for overtime work over the largest range of possible dates. After the Court pressed for more information, plaintiff's counsel added that El Mirador had agreed to pay the attorney's fees, and that El Mirador had accepted the hours from potential plaintiffs' payroll records without dispute.

But plaintiff's counsel also admitted that he did not differentiate the potential class based on the dates when they worked, that there was little defense to the compensation component for potential plaintiffs' overtime work during the Undisputed Period, and that potential plaintiffs who worked during the Undisputed Period had a stronger claim for liquidated damages than potential plaintiffs who worked during the Disputed Period.

For its part, El Mirador also indicated a desire to resolve the case without protracted litigation. Additionally, El Mirador made the point that, as a relatively small company faced with various administrative burdens, it had difficulty keeping up with labor regulations.

The parties' answers do not convince the Court that it was fair to eliminate liquidated damages altogether. First, workers from the Undisputed Period appear to have a viable claim for liquidated damages. Liquidated damages are the norm, ignorance is no excuse, and the parties did not present sufficient evidence to show that El Mirador reasonably believed it was in compliance with the FLSA. Aside from its generalized administrative-burden argument, El Mirador presented no specific information about the steps it took as a company to keep up and comply with the dictates of the FLSA.

Second, the Court is not convinced that plaintiff's counsel justifiably sacrificed the entirety of certain workers' liquidated damages claims. Almost every FLSA case involves vulnerable workers in need of timely relief. If a desire to avoid protracted litigation were enough to waive liquidated damages, then the liquidated damages provision would become the exception instead of the norm. Additionally, the Court questioned the parties early in the hearing about potential defenses El Mirador had against workers from the Undisputed Period, and each party initially claimed that El Mirador had no defense. Only later in the hearing, after more questioning from the Court, did the parties present generalized, *possible* defenses, e.g.,

employees working too many hours without permission. Indeed, the hearing became a brainstorming session where the parties imagined possible defenses against workers from the Undisputed Period to retroactively justify the lack of liquidated damages.

The Court is convinced that plaintiff's counsel unduly sacrificed the potential recovery for workers from the Undisputed Period to pay for the recovery of workers from the Disputed Period. Such an arrangement is unfair to workers from the Undisputed Period, who are not subject to the same "effective date" dispute as workers from the Disputed Period.

After considering the above factors, the Court concludes that the proposed settlement is not fair and equitable to all parties.

(3) Whether the proposed settlement contains an award of reasonable attorneys' fees.

The final factor a court must inspect in scrutinizing a proposed settlement is whether the attorney's fees are reasonable. *See Rodarte*, 2015 WL 5090531, at *7. The FLSA requires the Court to award plaintiff's counsel a reasonable attorney's fee and the costs of the action, but "the Court has discretion to determine the amount and reasonableness of the fee." *See Koehler*, 2016 WL 1403730, at *4. Because the Court has determined that the proposed settlement is not fair and equitable, an analysis of the attorney's fees and costs is premature. *See id.* at *12.

The Court notes, however, that part of the scrutiny for attorney's fees involves determining whether plaintiff's counsel spent an appropriate amount of time completing appropriate tasks. *See Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). Plaintiff's counsel asked the Court to review the counsel's work *in camera* to avoid disclosure of privileged content, and the Court agreed. To be clear, though, final approval of any settlement will include public analysis of plaintiff's counsel's rates, hours, and work, without revealing privileged content.

**CONCLUSION**

For the reasons provided, the Court **DENIES** the joint motion to approve the settlement.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**