**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARGARET J. LOPEZ, individually
and on behalf of all others similarly
situated,

   Plaintiff,

vs.            No. CV 16-01257 RB-KBM

EL MIRADOR, INCORPORATED,
and LOUIS PEREA,

   Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

  This matter is before the Court on the parties' second motion for approval of their proposed settlement. Satisfied that potential class members are similarly situated and that the settlement is fair, the Court approves final collective action certification and the proposed settlement.

## FACTS

  The facts applicable to this case are detailed in the Court's previous Memorandum Opinion and Order denying the first proposed settlement. (Doc. 51 at 1–4.) In short, the Department of Labor promulgated a regulation, 29 C.F.R. § 552.109(a), which required employers to pay Fair Labor Standards Act (FLSA) overtime wages to certain companionship and live-in employees in the home health industry. (*See id.* at 2.) Citing § 552.109(a), plaintiff Margaret Lopez brought this action on behalf of herself and others similarly situated to recover unpaid overtime wages that defendants (collectively, "El Mirador") allegedly failed to pay. (*Id.*)

Plaintiff's action covered the time period from January 1, 2015, through April 5, 2017. (*See id.* at 3.) Within that period, El Mirador disputes that it owes overtime wages from January 1, 2015, through October 12, 2015, contending that § 552.109(a) did not become effective until October 13, 2015. (*See id.*) The parties refer to the period of time over which they dispute the applicability of § 552.109(a) (January 1, 2015, through October 12, 2015) as the "disputed period." (*Id.*) They refer to the remaining time covered by the lawsuit (October 13, 2015, through April 1, 2017) as the "undisputed period." (*See id.*)

The parties came to a settlement agreement, but the Court rejected that agreement because the class members were not sufficiently similarly situated given the parties' agreement, and because the proposal was not fair. (*See id.* at 9, 17.) The parties have amended their proposed settlement in light of the Court's rejection and again ask the Court to certify the collective action and approve the new proposed settlement. (*See* Doc. 52 at 2.)

## DISCUSSION

In considering the parties' request, the Court examines whether final certification is appropriate and whether the proposed settlement is fair.

### I. Final Certification

When considering final collective action certification, the Court examines how similarly situated putative class members are by looking to factors such as the disparate factual and employment settings of individual plaintiffs, the defendant's unique defenses against individual plaintiffs, and fairness and procedural considerations. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) (laying out "similarly situated" factors for final collective action certification); *see also Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016

WL 1403730, at *4 (D. Kan. Apr. 11, 2016) (requiring a court to make final certification determination prior to approving any FLSA collective action settlement).

All potential plaintiffs shared the "same primary job duty" of "providing care, companionship, and support services to El Mirador's clients," and none of them were paid overtime wages. (Doc. 51 at 7.) Although potential plaintiffs worked for El Mirador during different time periods, (*id.*), that difference is muffled by the parties' inclusion of liquidated damages for time worked during the undisputed period, (*see* Doc. 52 at 2). Under the terms of the new proposed settlement, the disparate factual and employment settings of individual plaintiffs are similar, and this factor leans towards certification.

As for unique defenses particular to individual plaintiffs, El Mirador can challenge any recovery for time worked during the disputed period by arguing that § 552.109(a) only became effective during the undisputed period. This is only a viable defense against claims for wages from the disputed period, so El Mirador has a defense that is unique to certain plaintiffs. This factor leans against certification.

Lastly, the policy of allowing plaintiffs to pool their resources for litigation and the policy encouraging settlement of litigation weigh in favor of certifying the action.

After balancing the considerations above, the Court concludes that the potential plaintiffs are sufficiently similarly situated to warrant final collective action certification.

## II. Fairness of the Settlement

In judging the fairness of a settlement, courts look to "whether (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees." (Doc. 51 at 9 (citing

*Rodarte v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at *7 (D.N.M. Aug. 28, 2015)).)

### Bona fide dispute

The parties presented evidence that different courts have disagreed over when § 552.109(a) became effective, and that there is no controlling precedent to bind this Court. (*Id.* at 10.) There is a bona fide dispute about § 552.109(a)'s effective date.

### Fair and equitable settlement

On the fairness and equity of a proposed settlement, the Court must consider the Rule 23(e) factors that apply to proposed federal class action settlements, as well as whether the settlement comports with the FLSA's policy objectives. *Koehler*, 2016 WL 1403730, at *7.

The Rule 23(e) factors include " 'whether the proposed settlement was fairly and honestly negotiated,' whether there were serious questions of law and fact, 'whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation,' and 'the judgement of the parties that the settlement is fair and reasonable.' " (Doc. 51 at 11 (citing *Koehler*, 2016 WL 1403730, at *7).) Because the parties assert that they believe in the settlement's fairness, and that they engaged in about five months of discovery, bear risks on both sides, and only reached the proposed settlement "after extensive research, legal debates, discussion, and correspondence, and after good faith and arm's length negotiations," (*id.*), the Court believes the settlement satisfies the Rule 23(e) factors.

Moving to the question of whether the settlement comports with the FLSA's policy goals, the Court looks to (i) the notice given to the putative class members, (ii) the transparency of the settlement, (iii) the proposed service award to the class representative, and (iv) the liquidated damages provision. (*See id.*)

This Court may monitor the preparation and distribution of notice to ensure timely, accurate, and informative dissemination of notice to potential class members. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

The parties' proposed notice form (notice) explains the basis of the lawsuit and the terms of the settlement, including how much money each participant is entitled to receive if he or she opts in. (Doc. 52, Ex. 1-A at 1–2.) The notice explains that there is no obligation to join the settlement, but if putative class members choose to opt in, they must sign and return the included Consent and Release Form within 60 days. (*Id.* at 2–3.) The notice informs recipients that opting in to the settlement will allow them to receive their allotted payments, but will also cause them to relinquish any claims they may have against defendants that arise out of the operative facts of this case. (*Id.* at 2.) The notice discusses tax implications, legal representation, and how the attorneys' fee will be paid. (*Id.* at 3–4.) Finally, the notice reassures recipients that El Mirador cannot retaliate against any class member who opts in to the settlement. (*Id.* at 3.)

El Mirador will post the notice in conspicuous areas of several offices and has retained Rust Consulting, Inc. (Rust) as Settlement Administrator. (Doc. 52 at 2–3.) A Director at Rust, Justin Parks, has created a notice plan that aims to successfully deliver notices to 80% of potential class members. (*Id.* at 2.) According to the notice plan, Rust will use a mailing list prepared by the parties to mail the Class Notice via First Class mail. (Doc. 52, Ex. 1-B at 2.) The mailing list will be updated through the National Change of Address Database, which contains any change-of-address requests filed with the U.S. Postal Service. (*Id.*) If there are any notices that are returned as undeliverable, Rust will perform address traces—which utilize the class member's name, previous address, and Social Security number—to find an updated address. (*Id.*

at 3.) If necessary, Rust will also use "any reasonably available means such as social media, email or other internet searches" to find a class member's address. (*Id.*)

In light of the above information, the Court is satisfied that the parties have planned for timely, accurate, and informative distribution of notice to the parties.

### *(ii)* *Transparency of settlement*

The parties originally asked for the settlement to be filed under seal, but the Court stated that any final settlement should not be confidential given the legislative purpose and policy goals of the FLSA. (Doc. 51 at 12–13.) Heeding the Court, the parties have not asked for the new proposed settlement to be sealed.[1] (*See* Doc. 52 at 2.)

### *(iii)* *Proposed service award to class representative*

The parties have proposed to pay the class representative, Margaret Lopez, a service award of $2,500. Due to Ms. Lopez's initiative in enforcing her and similarly-situated workers' rights, and given Ms. Lopez's voluntary assumption of fiduciary responsibility to the class and her assumption of risk in being the face of the complaint against El Mirador, the Court finds the $2,500 award to be fair and reasonable.

### *(iv)* *Liquidated damages*

The Court rejected the parties' last settlement agreement in large part due to the lack of liquidated damages for unpaid wages during the undisputed period. (*See* Doc. 51 at 14–17.) Responding to the Court's concern, the parties have provided for full liquidated damages for all wages owed during the undisputed period, increasing the payment to the class by $63,650.46. (Doc. 52, Ex. 1 at 6.)

---

[1] Though the settlement agreement says "[t]his agreement shall be submitted to the Court for approval under seal," (Doc. 52, Ex. 1 at 18), the parties' words and deeds make clear that this language was left in the agreement in error, (*see* Doc. 52 at 2). The agreement will not be sealed.

In whole, the parties have assuaged the Court's previous concerns, and the new proposed settlement is fair and equitable to all parties and comports with the FLSA's policy objectives.

<u>Fairness and reasonableness of proposed attorneys' fee</u>

Lastly, the Court examines whether the proposed attorneys' fee is fair and reasonable. (*See* Doc. 51 at 17.) In evaluating the reasonableness of attorney's fees, district courts look to:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee–this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rodarte*, 2015 WL 5090531, at *6 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454–55 (10th Cir. 1988)).

Plaintiffs were represented in this litigation by two attorneys with years of experience litigating employment class actions. (*See* Doc. 45 at 10.) According to timesheets provided to the Court, plaintiff's counsel (including a legal assistant) spent 205.75 hours on the case.[2] (Doc. 52, Ex. 4 at 35.) This number coheres with the hours attorneys have spent in similar cases. *See, e.g.*, *Rodarte*, 2015 WL 5090531, at *9 (finding reasonable the 233.75 hours that class counsel spent on an FLSA case). Considering the fact that different courts have come to different opinions on an important issue here—the effective date of § 552.109(a)—and that the Tenth Circuit has yet to resolve the issue, this is a fairly novel case, requiring skillful legal research and argumentation, on which class counsel could reasonably spend 205.75 hours.

---

[2] The parties' first joint motion to approve the FLSA settlement—filed September 11, 2017—states that class counsel "spent 130 hours litigating" the case. (Doc. 45 at 8.) However, the timesheets provided to the Court on March 19, 2018, list 205.75 as the number of hours that class counsel (including the legal assistant) spent on this case. (Doc. 52, Ex. 4 at 35.) The Court will use the 205.75 figure as it was most recent.

Multiplying the 205.75 hours worked by the customary billing rate for plaintiff's counsel—$50 per hour for the legal assistant, and $325 and $350 per hour for the two attorneys—yields a total lodestar fee of $63,460.[3] (Doc. 52, Ex. 4 at 1, 4, 35.) This lodestar fee has been significantly reduced to $37,000, a sum that is less than the 35% contingency fee that Ms. Lopez agreed to. (Doc. 45, Ex. C at 4.) Additionally, the proposed $37,000 award makes up only about 16.51% of the gross settlement fund.[4] The proposed fee compares well to fees that other courts in the Tenth Circuit have approved in FLSA cases. *See, e.g.*, *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011) (approving an 18.77% award).

Looking to the performance of class counsel, counsel was able to obtain a gross settlement amount of $224,153.42 for approximately 300 putative plaintiffs, with the settlement including 60% of alleged overtime wages during the disputed period, 100% of alleged overtime wages during the undisputed period, and 100% of possible liquidated damages for unpaid wages during the undisputed period. (Doc. 52 at 6.) Plaintiff's counsel was essentially able to obtain the best possible result for the undisputed period, and then, during the period with a real dispute about whether the plaintiffs could recover *any* wages, plaintiff's counsel was able to secure the majority of those disputed wages. This result is comparable to those approved by other courts in this Circuit. *See, e.g.*, *Robles*, 2011 WL 9717448, at *3 (approving portion of the proposed settlement that provided for unpaid wages and 75.8% of liquidated damages).

---

[3] Class counsel's declaration—filed September 11, 2017—puts the lodestar amount as $44,574.50, (Doc. 45, Ex. C at 4), but the timesheets class counsel sent the Court on March 19, 2018, puts the "slip value" of the 205.75 hours worked at $63,460, (Doc. 52, Ex. 4 at 35). The Court will use the most recent figure ($63,460), but also notes that, regardless of which figure the Court uses, the requested $37,000 attorneys' fee is still a discount from the lodestar.

[4] The parties' previous calculation that the $37,000 fee represents 23% of the gross settlement fund, (Doc. 45 at 9), was based on the previous gross settlement sum of $160,484.96, which did not include the Court-mandated liquidated damages.

Class counsel has not discussed how undertaking this representation may have precluded work on other cases, any time limits involved, any undesirable elements to this case, or the nature and length of the professional relationship with the client. Nonetheless, the Court is convinced that, in sum, the proposed attorneys' fee of $37,000 is fair and reasonable. *See Rodarte*, 2015 WL 5090531, at *12–13 (discounting as irrelevant some of the twelve attorney's fee factors and finding that, in sum, the attorney's fee was reasonable and fair).

The litigation involves a bona fide dispute, the proposed settlement is fair and equitable to all parties, the settlement is consistent with the policy directives of the FLSA, and the proposed attorneys' fee is reasonable and fair.

## CONCLUSION

For the reasons provided, the Court **approves** final certification of the collective action. The Court also **approves** the proposed settlement, with its attendant attorneys' fee, deadlines, notice to parties, and service award to class representative. After all payments are made under the terms of the settlement agreement, the plaintiffs shall file a motion to dismiss this suit with prejudice.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**